JS-6; REMAND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-05049-RGK (PDx) | Date | September 9, 2021 |
|---|---|---|---|
| Title | *Stephen Cartwright v. Envoy Air, Inc., et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams (not present) | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** **(IN CHAMBERS) Order Re: Plaintiff's Motion to Remand [DE 17]**

## I. INTRODUCTION

On April 1, 2021, Plaintiff Stephen Cartwright ("Plaintiff"), on behalf of all other similarly situated employees in the State of California, filed a Complaint in state court against Defendant Envoy Air, Inc. ("Envoy"). Plaintiff's claims arise from alleged wage and hour violations committed by Envoy during Plaintiff's employment with Envoy. Plaintiff asserts the following claims under the California Labor Code, the Los Angeles Living Wage Ordinance ("LWO"), and the Industrial Welfare Commission ("IWC") Wage Orders: (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to pay minimum and regular wages; (4) failure to indemnify all necessary expenditures; (5) unlawful deductions from wages; (6) failure to provide accurate itemized wage statements; (7) failure to timely pay all wages due upon separation of employment; and (8) violation of Business & Professions Code § 17200, *et seq*. On June 14, 2021, Plaintiff filed a First Amended Complaint.

On June 21, 2021, Envoy removed this action to federal court based on diversity jurisdiction under the Class Action Fairness Act ("CAFA"). On July 23, 2021, Plaintiff filed the current Motion to Remand. For the following reasons, the Court **GRANTS** Plaintiff's Motion.

## II. FACTUAL BACKGROUND

Plaintiff worked for Envoy as a non-exempt ramp agent at Los Angeles International Airport ("LAX") from approximately October 2016 to November 2019. Plaintiff alleges that Envoy, at times, denied Plaintiff and other similarly situated employees their rights under the California Labor Code and IWC Wage Order 4. Specifically, "Defendants failed to pay them all minimum and regular wages owed, failed to provide them with legally compliant meal and rest breaks, failed to pay them meal and rest break premiums, failed to reimburse them for all business expenses, failed to maintain accurate records and issue accurate itemized wage statements, failed to provide accurate written notice of sick leave, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-05049-RGK (PDx) | Date | September 9, 2021 |
|---|---|---|---|
| Title | *Stephen Cartwright v. Envoy Air, Inc., et al.* | | |

failed to timely pay all wages, including all wages due upon separation of employment." (FAC ¶ 24.) Plaintiff seeks damages for only the claims that were not released in the settlement that occurred in *Schroeder v. Envoy Air, Inc.*, Case No. 2:16-cv-04911-MWF-KS ("Schroeder Settlement").

Plaintiff seeks to represent himself and a class of "[a]ll current and former non-exempt employees who did not enter into a valid arbitration agreement with Envoy and worked for Envoy in the State of California at any time from October 4, 2016 through the present" (the "Non-Exempt Class"). (*Id.* ¶ 49.) Plaintiff divides the Non-Exempt Class into three subclasses:

(1) "all members of the Non-Exempt Class who were required to carry radios or other electronic communications device as part of their job duties from October 4, 2016 through the present" (the "Radio Subclass");
(2) "all members of the Non-Exempt Class who worked for Defendants in an area governed by the LWO from October 4, 2016 through the present" (the "Los Angeles Subclass");
(3) "all members of the Non-Exempt Class who were not paid all wages owed and whose employment with Defendants ended at any time from October 4, 2017 through the present" (the "Waiting Time Penalties Subclass").[1]

(*Id.*)

### III. JUDICIAL STANDARD

28 U.S.C. § 1441(a) authorizes defendants to remove a case to federal court when the federal court would have had original jurisdiction over the case. However, courts "strictly construe the removal statute against removal jurisdiction" and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992). The defendant always bears the burden of establishing that removal is proper. *Id*.

The enactment of CAFA does not alter this rule. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) ("[When enacting CAFA] Congress intended to maintain the historical rule that it is the proponent's burden to establish a prima facie case of removal jurisdiction."). Although a presumption against federal jurisdiction exists in run-of-the-mill diversity cases, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574

---

[1] Although Envoy does not point this out, Plaintiff's class and subclass designations lead to overcounting. In various causes of action, Plaintiff claims Envoy harmed both the entire Non-Exempt Class and particular subclasses. Because the Non-Exempt Class encompasses each subclass, Plaintiff double counts the injured parties by claiming Envoy harmed the Non-Exempt Class and a particular subclass.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-05049-RGK (PDx) | Date | September 9, 2021 |
|---|---|---|---|
| Title | *Stephen Cartwright v. Envoy Air, Inc., et al.* | | |

U.S. 81, 89 (2014). CAFA vests district courts with original jurisdiction over putative class actions where (1) the amount in controversy exceeds $5 million (2) the class members number at least 100, and (3) at least one plaintiff is diverse from any one defendant. 28 U.S.C. §1332(d)(2)-(5).

The defendant removing the case to federal court bears the burden of establishing the jurisdictional facts, namely the amount in controversy and complete diversity of the parties. *Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676, 682-83 (9th Cir. 2006). Where a plaintiff contests a jurisdictional fact, the defendant must establish that fact by a preponderance of the evidence. *Gaus*, 980 F.2d at 566-67 (quoting *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

### IV.  DISCUSSION

A removing party's notice of removal need include only "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. However, when a plaintiff challenges the defendant's assertion of the amount in controversy, evidence establishing the amount is required. *Id.* "When a plaintiff mounts a factual attack, the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." *Harris v. KM Industrial, Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (citing *Ibarra v. Manheim Inv., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)).

"Along with the complaint, [the court] consider[s] allegations in the removal petition, as well as 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (quoting *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005)). When the plaintiff disputes that the amount in controversy is satisfied, "[c]onclusory allegations as to the amount in controversy are insufficient" to satisfy the removing party's burden of proof. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090-91 (9th Cir. 2003). "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Ibarra v. Manheim Inv., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

Plaintiff asserts that the Court lacks subject matter jurisdiction under CAFA because Envoy has failed to satisfy its burden of proving, by a preponderance of the evidence, that the amount in controversy exceeds CAFA's $5 million requirement. Specifically, Plaintiff argues that Envoy overstates the class size, fails to support its proposed violation rates with any evidence, and assumes an amount of attorney's fees that is unsupported by any evidence. The Court agrees and addresses each argument in turn.

    **A.**    **Envoy Overestimates the Class Size.**

In its amount in controversy calculations, Envoy overestimates the class size by including people outside of Plaintiff's defined class, which includes only those people who did not enter a valid

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-05049-RGK (PDx) | Date | September 9, 2021 |
|---|---|---|---|
| Title | *Stephen Cartwright v. Envoy Air, Inc., et al.* | | |

arbitration agreement. Envoy acknowledges that in its class size estimate, it includes 626 people who "are covered by an arbitration agreement signed by their union and made a part of their collective bargaining agreement." (Def.'s Opp'n, at 11, n. 2.) However, Envoy claims these people are class members, nonetheless, because the arbitration agreements are not valid since Envoy "has not yet sought to enforce that agreement." (*Id.*)

It is well-established that the validity of an arbitration clause is a matter of contract. Absent factors not relevant here, a written provision in a contract that settles any controversy arising out of such contract by arbitration shall be valid. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (quoting 9 U.S.C. § 2). Therefore, the fact that Envoy has not yet sought to enforce the arbitration agreements for those 626 people has no bearing on the validity of those agreements. Since Plaintiff's class is composed of employees who did *not* enter into a valid arbitration agreement, the 626 people at issue here are excluded from the class for purposes of determining jurisdiction.

Envoy overstates the class size by 41%, a difference that is significant enough to impact the question of the amount in controversy. As addressed in the following section, when using the adjusted class size, Envoy's calculations falter, raising the bar of how much evidence is required from Envoy to satisfy its burden.

### B.    Envoy Fails to Provide Evidence Supporting its Violation Rate Estimates.

Although Plaintiff's First Amended Complaint uses varying language, the face of the First Amended Complaint, the Motion to Remand, and Reply make it clear that Plaintiff alleges a "pattern and practice" of violations. A plaintiff's allegation of "occasional failure," which indicates a rate less frequent than "pattern and practice," can support a wage and hour violation rate of 20%. *Luna v. Pronto California Gen. Agency, LLC*, No. 2:20-cv-05223-RGK-KS, 2020 WL 4883879, at *3, n. 1 (C.D. Cal. Aug. 19, 2020). However, a "pattern and practice" of violations does not necessarily indicate a 100% violation rate. *Ibarra*, 775 F.3d at 1198-99. Accordingly, a reasonable interpretation of "pattern and practice" points to a rate somewhere between 20% and 100%. If a complaint does not allege a 100% violation rate, the defendant "bears the burden to show that its estimated amount in controversy relied on reasonable assumptions." *Ibarra*, 775 F.3d at 1199.

Here, in both Envoy's Notice of Removal and Opposition to Plaintiff's Motion to Remand, Envoy fails to provide sufficient evidence supporting its violation rate estimates. In its Notice of Removal, Envoy utilizes various conservative estimates of the violation rates, such as one meal and rest period missed per week and per month, to calculate the amount in controversy. (Notice of Removal, at 18-21.) However, in responding to Plaintiff's Motion to Remand, wherein Plaintiff challenges Envoy's calculations, Envoy adjusts its factual basis for its estimate and applies higher violation rates. Envoy offers three violation rate estimates, 33%, 66%, and 100%, without explaining why it changed the estimates from its Notice of Removal to its Opposition or why it provided three rates. (Def's. Opp'n, at

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-05049-RGK (PDx) | Date | September 9, 2021 |
|---|---|---|---|
| Title | *Stephen Cartwright v. Envoy Air, Inc., et al.* | | |

9-13.) Although Envoy provides some credible evidence, such as declarations establishing payroll periods and hourly pay rates, it does not provide sufficient evidence regarding how it estimated the specific violation rates. [2]

These facts raise questions regarding Envoy's assertions. As an initial matter, in response to Plaintiff's challenge to Envoy's initial calculations, Envoy uses higher rates in its Opposition. This suggests that, rather than setting forth violation rates grounded in evidence or made in good faith, Envoy's violation rates were manufactured with the sole purpose of trying to establish CAFA's $5 million requirement. But even considering the merits of Envoy's reframed calculations, the three violation rates set forth in Envoy's opposition do not yield a uniform result. Rather, when using a starting point that accounts for the adjustments discussed above, the 66% and 100% violation rate scenarios meet the $5 million requirement. But, a 33% violation rate does not. In fact, based on the data set forth by Envoy, it appears that any average rate below approximately 44.2% fails to meet the jurisdictional minimum. Although Plaintiff has not provided evidence supporting a specific violation rate estimate, Envoy bears the burden of proof. In light of the fact that "pattern and practice" denotes a violation rate somewhere between 20% and 100%, with 44.2% being the tipping point here, more facts are necessary to establish why the violation rate exceeds the 44.2% threshold. Envoy has not provided such facts. Therefore, the Court finds that Envoy fails to satisfy its burden.

    **C.    Envoy Fails to Adequately Support Attorney's Fees in its Amount in Controversy Estimate.**

While courts may consider attorney's fees when accounting for the amount in controversy, district courts within the Ninth Circuit are split with respect to how a defendant is able to meet its burden of showing the amount of prospective attorney's fees. Some courts have declined to include such fees because of how inherently speculative prospective fees are, particularly at the very start of litigation. *See, e.g.*, *MIC Philberts Invs. v. Am. Cas. Co. of Reading, Pa.*, No. 1:12-cv-0131 AWI-BAM, 2012 WL 2118239, at *5 (E.D. Cal. June 11, 2012). In those cases, the courts have found that attorney's fees are in the control of the client and counsel and may be avoided or accrued over years, depending on the legal strategy. *See Grieff v. Brigandi Coin Co.*, No. C14-214 RAJ, 2014 WL 2608209, at *3 (W.D. Wash. June 11, 2014). The Court finds those holdings well-reasoned and finds that prospective attorney's fees in this situation are too speculative for inclusion into the amount in controversy.

---

[2] Although Envoy made plausible arguments that some of Plaintiff's causes of action warrant a 100% violation rate, it has not provided sufficient evidence supporting these propositions or consistently applied the same rates across its briefs, and, nevertheless, has refused to provide an accurate class size for the amount in controversy estimate.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-05049-RGK (PDx) | Date | September 9, 2021 |
|---|---|---|---|
| Title | *Stephen Cartwright v. Envoy Air, Inc., et al.* | | |

**V.      CONCLUSION**

For these reasons, the Court **GRANTS** Plaintiff's Motion.

**IT IS SO ORDERED.**

                                                                                                                        :

Initials of Preparer